FILED

FEB 1 8 2021

CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF OHIO
CLEVELAND

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) **I N D I C T M E N T** |
| | ) |
| Plaintiff, | ) **1:21 CR 123** |
| | ) |
| v. | ) CASE NO. _____ |
| | ) Title 18, United States Code, |
| KENNETH JOHNSON, | ) Sections 371, 666(a)(1)(A), |
| GARNELL JAMISON, | ) 1512(b)(1), 1519, and 2; Title 26, |
| JOHN HOPKINS, | ) United States Code, Section |
| | ) 7206(2) |
| Defendants. | ) |

JUDGE ADAMS

<u>General Allegations</u>

At all times relevant to this Indictment:

**Defendants and Other Individuals/Entities**

1.     Defendant KENNETH JOHNSON ("JOHNSON") was a resident of Cleveland,

Ohio, and was elected to serve as a Councilperson for the City of Cleveland ("the City").

2.     Defendant GARNELL JAMISON ("JAMISON") worked for the City as

JOHNSON's Executive Assistant, a position JAMISON held for over 20 years.

3.     Defendant JOHN HOPKINS ("HOPKINS") was a resident of Cleveland Heights,

Ohio.

4.     Robert Fitzpatrick ("Fitzpatrick") (named but not charged herein) worked for the

City in the Division of Recreation.  Fitzpatrick began his work for the City in or around 1985.

Fitzpatrick worked in various positions within the Division of Recreation until being promoted to

a regional manager in or around 2010.  In this position, Fitzpatrick oversaw operations at seven

recreation centers within the City.  This included directly supervising the center manager at each

recreation center.

5.      Person 1 was a resident of Cleveland, Ohio.  According to the records of the Cuyahoga County Court of Common Pleas, Probate Division, JOHNSON was Person 1's court-appointed guardian.

6.      Person 2 was a resident of Cleveland, Ohio.  According to Person 2's Ohio birth certificate, JOHNSON was Person 2's father.

7.      Person 3 was a resident of Cleveland, Ohio.  According to the records of the Cuyahoga County Court of Common Pleas, Probate Division, JOHNSON was Person 3's maternal uncle and court-appointed guardian.

8.      Person 4 was a resident of Cleveland, Ohio.  According to the records of the Cuyahoga County Court of Common Pleas, Probate Division, JOHNSON was Person 4's court-appointed guardian.

9.      The City was a political subdivision within the state of Ohio and was a government organization as defined by Title 18, United States Code, Section 666(d)(2).

10.      The Buckeye Shaker Square Development Corporation ("BSSDC") was an Ohio Community Improvement Corporation (also known as a Community Development Corporation), as defined by Ohio Revised Code, Chapter 1724, and organized under Ohio Revised Code, Chapter 1702.

### Federal Community Development Funds

11.      During each one-year period from July 2009 to June 2019, the City received benefits in excess of $10,000 under a federal program involving a grant, contract, subsidy, loan, guarantee, insurance, and other forms of federal assistance.  These included funds under Title I of the Housing and Community Development Act of 1974, issued by the United States Department of Housing and Urban Development ("HUD") ("Community Development Funds").

2

12.     The Community Development Funds were distributed in grant years that began on July 1 of one calendar year and ended on June 30 of the following calendar year.  In each of the following grant years, the City received Community Development Funds in the following amounts:

| Grant Year | Approximate Grant Amount |
|---|---|
| July 1, 2009 to June 30, 2010 | $23,928,345 |
| July 1, 2010 to June 30, 2011 | $25,908,893 |
| July 1, 2011 to June 30, 2012 | $21,654,582 |
| July 1, 2012 to June 30, 2012 | $20,041,424 |
| July 1, 2013 to June 30, 2014 | $20,265,802 |
| July 1, 2014 to June 30, 2015 | $19,986,578 |
| July 1, 2015 to June 30, 2016 | $19,564,836 |
| July 1, 2016 to June 30, 2017 | $19,382,724 |
| July 1, 2017 to June 30, 2018 | $19,324,970 |
| July 1, 2018 to June 30, 2019 | $21,175,297 |

13.     The Community Development Funds were deposited with the City.

**Reimbursements from the City**

14.     The legislative branch of the City was Cleveland City Council ("Council"). There were seventeen elected members of Council, each representing approximately 25,000 citizens in one of seventeen discrete geographic areas called "wards."

15.     JOHNSON was elected to represent Ward 4, which included the Buckeye-Shaker neighborhood.

16.     JAMISON, in his capacity as JOHNSON's Executive Assistant, was responsible for assisting JOHNSON with administrative tasks, including those required for JOHNSON's various projects in Ward 4.

17.     In the City, each member of the Council had a council member expense account. Each month, Council members could be reimbursed for up to $1,200 in eligible council-related expenses.  Expenses eligible for reimbursement included in-home or rental office expenses,

printing or postage costs, telephone expenses, automobile expenses, or payments made to service providers.

18.     Council members had to complete the City's Form M-1 ("Council Member Expense Report") to receive reimbursement each month, documenting how much money the Council member spent on eligible expenses in a given month.  Council members were also required to provide supporting documentation to verify the legitimacy of the expenses they submitted for reimbursement.

19.     After the Council member submitted the Council Member Expense Report and supporting documentation, an administrative employee for Council reviewed the claim and approved or denied the reimbursement.  If approved, the City issued a check to the Council Member for the amount approved for reimbursement.

20.     Over ten years ago, JOHNSON and JAMISON approached Fitzpatrick and asked him to perform ward services in Ward 4.  These tasks included cutting grass, checking on properties, assisting with snow removal, and looking for potential homes that could be renovated and sold for a profit.

21.     Fitzpatrick performed ward services for approximately six weeks in or around 2010.

22.     Neither JOHNSON nor JAMISON ever paid Fitzpatrick for the ward services he performed.  Fitzpatrick continued to receive his salary from the City.

23.     Fitzpatrick did not perform any ward services after the initial six weeks in or around 2010.

24.     From in or around January 2010, to in or around October 2018, JAMISON regularly delivered time sheets to Fitzpatrick and instructed him to sign them.  Fitzpatrick

complied, even though he did not actually perform any ward services beyond the initial six weeks.  Each time sheet was a document that purported to reflect the hours that Fitzpatrick performed ward services in Ward 4.

25.     From in or around January 2010, to in or around October 2018, JAMISON collected the completed time sheets from Fitzpatrick and delivered them to JOHNSON.

26.     From in or around January 2010, to in or around October 2018, JOHNSON submitted false Council Member Expense Reports to the City.  JOHNSON attached Fitzpatrick's false time sheets to each of the false Council Member Expense Reports.  JOHNSON also attached receipts purporting to reflect that JOHNSON had paid Fitzpatrick in cash for performing ward services.  Each receipt purported to bear Fitzpatrick's signature.  The false Council Member Expense Reports, false time sheets, and receipts are together referred to herein as the "Council Reimbursement Packet."

27.     From in or around January 2010, through in or around October 2018, JOHNSON requested the maximum reimbursement – $1,200 – every month.  JOHNSON made these reimbursement requests for ward services that Fitzpatrick purportedly performed in Ward 4.

28.     Based on the Council Reimbursement Packets that JOHNSON submitted, from on or about January 28, 2010, to on or about October 16, 2018, the City issued $1,200 monthly expense reimbursement checks to JOHNSON, totaling approximately $127,200.  Each expense reimbursement check from the City was deposited into JOHNSON's personal bank account.

**The Buckeye Shaker Square Development Corporation**

29.     In Ohio, Community Improvement Corporations like BSSDC were nonprofit, community-focused entities formed to support their affiliated city neighborhoods with a range of

programs, including affordable housing, economic development, safety, and social services.  The BSSDC was the main Community Improvement Corporation in Ward 4.

30.     The City administered a program through which it distributed federal Community Development Funds to the BSSDC via community block grants.  The City's distribution of these funds was subject to certain federal laws restricting how the funds could be used.

31.     Each member of Council had authority to direct the City to allocate and distribute federal community development funds.  Members of Council exercised this authority by executing forms, including a form called the Council Authorization for the Use of Neighborhood Development Activity/Community Development Block Grant Funds ("CDBG Funds Authorization Forms").  JOHNSON used his authority as a member of Council to direct the City to allocate, and later distribute, federal Community Development Funds to BSSDC by signing CDBG Funds Authorization Forms.

32.     HOPKINS was Executive Director of BSSDC.  In that capacity, HOPKINS's responsibilities included authorizing BSSDC to issue checks, reviewing BSSDC expenditures, and submitting appropriate expenditures for reimbursements from grants awarded by the City.

33.     Federal law, specifically 24 CFR § 570.611, and the City's conflict of interest prohibitions related to the distribution and receipt of the Community Development Funds, prohibited any person, or family of a person, who was an employee, agent, consultant, officer, or elected official or appointed official of the BSSDC or the City, from personally benefitting from the federal Community Development Funds.  The City required recipients of Community Development Funds to sign a contract agreeing to these restrictions.

34.     On or about the dates listed below, HOPKINS signed contracts on behalf of

BSSDC accepting the federal Community Development Funds and agreeing to abide by the

terms of the distribution, including the conflict of interest prohibitions:

| Approx. Date of Signature |
| --- |
| October 28, 2014 |
| November 9, 2015 |
| November 15, 2016 |
| November 15, 2017 |

35.     BSSDC purported to employ individuals to perform landscaping at, and otherwise

maintain, certain properties within Ward 4.  These employees documented the time they worked

performing these services on forms called Community Development Block Grant Time Sheets

("Block Grant Time Sheet").  Each Block Grant Time Sheet was signed by the employee and

included a certification which read "I certify that this is a true record of my time and recognize

that any misstatement will subject me to disciplinary action."  BSSDC paid employees based

upon the number of hours reported on their Block Grant Time Sheet.

36.     From in or around December 2013, to in or around March 2018, HOPKINS

signed not less than approximately $50,000 in BSSDC checks issued to third-parties, including

Person 1, Person 2, and Person 3, which were later deposited or transferred into bank accounts

held and controlled by JOHNSON.

37.     PNC Bank account ending x1346, opened on or about June 5, 2001, ("the PNC

account") was under JOHNSON's care, custody, and control.

<u>COUNT 1</u>
(Conspiracy to Commit Federal Program Theft, 18 U.S.C. § 371)

The Grand Jury charges:

38.     The factual allegations contained in paragraphs 1 through 28 are realleged and

incorporated by reference as if fully set forth herein.

39.     From on or about January 28, 2010, through on or about October 16, 2018, in the Northern District of Ohio, Eastern Division, and elsewhere, Defendants KENNETH JOHNSON and GARNELL JAMISON, and Robert Fitzpatrick (named but not charged herein) and others known and unknown to the Grand Jury, did knowingly and intentionally combine, conspire, confederate and agree together and with each other to violate the laws of the United States, to wit: to commit Federal Program Theft, in violation of Title 18, United States Code, Section 666(a)(1)(A).

### Objects of the Conspiracy

40.     The objects of the conspiracy were to: (1) induce the City to issue expense reimbursement checks to JOHNSON; (2) prevent detection of the conspiracy; and (3) enrich JOHNSON and others.

### Manner and Means

41.     It was part of the conspiracy that:

a.      Defendants and their co-conspirators created and caused to be created false and fraudulent documents, including Council Reimbursement Packets.

b.      Defendants and their co-conspirators submitted and caused to be submitted to the City false and fraudulent documents, including time sheets, receipts of cash payments, and Council Member Expense Reports.

c.      Defendants and their co-conspirators caused the City to issue expense reimbursement checks to JOHNSON to which he was not entitled.

<u>Overt Acts</u>

42.      In furtherance of the conspiracy, and to achieve its objectives, one or more

members of the conspiracy committed the following overt acts, among others, in the Northern

District of Ohio and elsewhere:

a.      On or about the dates listed below, JAMISON delivered time sheets to

Fitzpatrick for Fitzpatrick to complete and sign, each delivery constituting a separate overt act:

|    | Approx. Date of Delivery |
|----|--------------------------|
| 1  | October 2, 2010          |
| 2  | October 10, 2010         |
| 3  | October 16, 2010         |
| 4  | October 24, 2010         |
| 5  | October 31, 2010         |
| 6  | October 2, 2011          |
| 7  | October 9, 2011          |
| 8  | October 16, 2011         |
| 9  | October 23, 2011         |
| 10 | October 30, 2011         |
| 11 | October 7, 2012          |
| 12 | October 14, 2012         |
| 13 | October 21, 2012         |
| 14 | October 28, 2012         |
| 15 | October 31, 2012         |
| 16 | September 8, 2013        |
| 17 | September 14, 2013       |
| 18 | September 22, 2013       |
| 19 | September 29, 2013       |
| 20 | September 30, 2013       |
| 21 | September 7, 2014        |
| 22 | September 21, 2014       |
| 23 | September 27, 2014       |
| 24 | September 30, 2014       |
| 25 | September 5, 2015        |
| 26 | September 12, 2015       |
| 27 | September 19, 2015       |
| 28 | September 26, 2015       |
| 29 | September 30, 2015       |
| 30 | September 3, 2016        |
| 31 | September 10, 2016       |
| 32 | September 17, 2016       |

|    | Approx. Date of Delivery |
|----|--------------------------|
| 33 | September 24, 2016 |
| 34 | September 30, 2016 |
| 35 | September 1, 2017 |
| 36 | September 8, 2017 |
| 37 | September 15, 2017 |
| 38 | September 22, 2017 |
| 39 | September 29, 2017 |
| 40 | September 7, 2018 |
| 41 | September 14, 2018 |
| 42 | September 21, 2018 |
| 43 | September 28, 2018 |

b.      On or about the dates listed below, Fitzpatrick signed time sheets, attesting

that he had performed ward services, each signature constituting a separate overt act:

|    | Approx. Date of Signature |
|----|---------------------------|
| 1  | October 2, 2010 |
| 2  | October 10, 2010 |
| 3  | October 16, 2010 |
| 4  | October 24, 2010 |
| 5  | October 31, 2010 |
| 6  | October 2, 2011 |
| 7  | October 9, 2011 |
| 8  | October 16, 2011 |
| 9  | October 23, 2011 |
| 10 | October 30, 2011 |
| 11 | October 7, 2012 |
| 12 | October 14, 2012 |
| 13 | October 21, 2012 |
| 14 | October 28, 2012 |
| 15 | October 31, 2012 |
| 16 | September 8, 2013 |
| 17 | September 14, 2013 |
| 18 | September 22, 2013 |
| 19 | September 29, 2013 |
| 20 | September 30, 2013 |
| 21 | September 7, 2014 |
| 22 | September 21, 2014 |
| 23 | September 27, 2014 |
| 24 | September 30, 2014 |
| 25 | September 5, 2015 |
| 26 | September 12, 2015 |
| 27 | September 19, 2015 |

| | Approx. Date of Signature |
|---|---|
| 28 | September 26, 2015 |
| 29 | September 30, 2015 |
| 30 | September 3, 2016 |
| 31 | September 10, 2016 |
| 32 | September 17, 2016 |
| 33 | September 24, 2016 |
| 34 | September 30, 2016 |
| 35 | September 1, 2017 |
| 36 | September 8, 2017 |
| 37 | September 15, 2017 |
| 38 | September 22, 2017 |
| 39 | September 29, 2017 |
| 40 | September 7, 2018 |
| 41 | September 14, 2018 |
| 42 | September 21, 2018 |
| 43 | September 28, 2018 |

  c. On or about the dates listed below, JOHNSON signed Council Member Expense Reports, each signature constituting a separate overt act:

| | Approx. Date of Signature |
|---|---|
| 1 | October 30, 2010 |
| 2 | November 1, 2011 |
| 3 | October 27, 2012 |
| 4 | October 7, 2013 |
| 5 | October 1, 2014 |
| 6 | October 1, 2015 |
| 7 | October 1, 2016 |
| 8 | October 1, 2017 |
| 9 | October 6, 2018 |

  d. On or about the dates listed below, JOHNSON submitted and caused to be submitted Council Reimbursement Packets to the City, seeking reimbursement for the money that JOHNSON had purportedly paid to Fitzpatrick for his purported ward services, each submission constituting a separate overt act:

| | Approx. Date of Submission |
|---|---|
| 1 | November 1, 2010 |
| 2 | November 2, 2011 |
| 3 | October 29, 2012 |

| | Approx. Date of Submission |
|---|---|
| 4 | October 7, 2013 |
| 5 | October 6, 2014 |
| 6 | October 12, 2015 |
| 7 | October 5, 2016 |
| 8 | October 4, 2017 |
| 9 | October 9, 2018 |

e.      On or about the dates listed below, JOHNSON deposited and caused to be deposited into the PNC account the following City expense reimbursement checks, each in the amount of $1,200, each deposit constituting a separate overt act:

| | Approx. Date of Deposit | Check Number |
|---|---|---|
| 1 | October 20, 2013 | 1078294 |
| 2 | October 24, 2014 | 1106065 |
| 3 | October 22, 2015 | 1133960 |
| 4 | October 13, 2016 | 1161301 |
| 5 | October 11, 2017 | 1189517 |
| 6 | October 18, 2018 | 1219851 |

All in violation of Title 18, United States Code, Section 371.

COUNT 2
(Conspiracy to Commit Federal Program Theft, 18 U.S.C. § 371)

The Grand Jury further charges:

43.      The factual allegations contained in paragraphs 1 through 13 and 29 through 37 are realleged and incorporated by reference as if fully set forth herein.

44.      From on or about September 3, 2013, through on or about June 30, 2019, in the Northern District of Ohio, Eastern Division, and elsewhere, Defendants KENNETH JOHNSON and JOHN HOPKINS, and Person 1, Person 2, Person 3 (known to the Grand Jury but not charged herein), and others known and unknown to the Grand Jury, did knowingly and intentionally combine, conspire, confederate and agree together and with each other to violate

the laws of the United States, to wit: to commit Federal Program Theft, in violation of Title 18, United States Code, Section 666(a)(1)(A).

Objects of the Conspiracy

45.     The objects of the conspiracy were to: (1) cause the City to issue Community Development Funds to BSSDC; (2) induce BSSDC to issue checks to Person 1, Person 2, and Person 3 to which they were not entitled; (3) prevent detection of the conspiracy; and (4) enrich JOHNSON and others.

Manner and Means

46.     It was part of the conspiracy that:

a.     Defendants and their co-conspirators signed documents, including CDBG Funds Authorization Forms, directing the City to issue Community Development Funds to BSSDC.

b.     Defendants and their co-conspirators signed contracts with the City accepting the Community Development Funds under terms that prohibited conflicts of interest or personally benefitting from the Community Development Funds.

c.     Defendants and their co-conspirators created and caused to be created false and fraudulent documents, including time sheets.

d.     Defendants and their co-conspirators caused BSSDC to issue checks to Person 1, Person 2, and Person 3 to which they were not entitled.

e.     Defendants and their co-conspirators deposited and caused to be deposited BSSDC checks issued to and purported to be endorsed by Person 1, Person 2, and Person 3 into the PNC account.

Overt Acts

47.     In furtherance of the conspiracy, and to achieve its objectives, one or more members of the conspiracy committed the following overt acts, among others, in the Northern District of Ohio and elsewhere:

a.      On or about the dates listed below, JOHNSON signed CDBG Funds Authorization Forms directing the City to allocate a portion of the federal Community Development Funds to BSSDC, each signature constituting a separate over act:

| | Approx. Date of Signature |
|---|---|
| 1 | July 16, 2014 |
| 2 | October 1, 2015 |
| 3 | June 2, 2016 |
| 4 | October 26, 2017 |

b.      On or about the dates listed below, HOPKINS signed contracts on behalf of BSSDC, accepting the federal Community Development Funds and agreeing to abide by the terms of the distribution, each signature constituting a separate overt act:

| | Approx. Date of Signature |
|---|---|
| 1 | October 28, 2014 |
| 2 | November 9, 2015 |
| 3 | November 15, 2016 |
| 4 | November 15, 2017 |

c.      On or about the dates listed below, JOHNSON, HOPKINS, and Person 1 signed and caused to be signed Block Grant Time Sheets, each signature constituting a separate overt act:

| | Approx. Date of Signature |
|---|---|
| 1 | January 31, 2014 |
| 2 | February 28, 2014 |
| 3 | March 31, 2014 |
| 4 | April 30, 2014 |
| 5 | May 31, 2014 |
| 6 | June 22, 2014 |
| 7 | July 31, 2014 |

| | Approx. Date of Signature |
|---|---|
| 8 | August 28, 2014 |
| 9 | September 30, 2014 |
| 10 | November 29, 2014 |
| 11 | December 31, 2014 |
| 12 | January 31, 2015 |
| 13 | February 26, 2015 |
| 14 | March 31, 2015 |
| 15 | April 30, 2015 |
| 16 | May 30, 2015 |
| 17 | March 27, 2016 |
| 18 | June 29, 2018 |

     d.     On or about the dates listed below, JOHNSON, HOPKINS, and Person 1

caused BSSDC to issue checks to Person 1, each check constituting a separate overt act:

| | Approx. Date of Issuance | Check Number |
|---|---|---|
| 1 | April 15, 2014 | 18103 |
| 2 | September 15, 2014 | 18578 |
| 3 | October 31, 2014 | 18661 |
| 4 | March 30, 2015 | 18896 |
| 5 | April 15, 2015 | 18938 |
| 6 | April 15, 2015 | 15577 |
| 7 | April 30, 2015 | 18987 |
| 8 | February 29, 2016 | 839 |
| 9 | March 15, 2016 | 881 |
| 10 | March 31, 2016 | 931 |
| 11 | April 15, 2016 | 977 |
| 12 | May 13, 2016 | 1063 |
| 13 | May 27, 2016 | 1102 |
| 14 | August 15, 2016 | 1438 |
| 15 | August 31, 2016 | 1512 |
| 16 | September 15, 2016 | 1569 |
| 17 | September 30, 2016 | 1618 |
| 18 | October 14, 2016 | 1701 |
| 19 | October 31, 2016 | 1747 |
| 20 | November 15, 2016 | 1793 |
| 21 | November 30, 2016 | 1846 |
| 22 | December 15, 2016 | 1881 |
| 23 | December 22, 2016 | 16052 |
| 24 | December 30, 2016 | 1963 |
| 25 | January 13, 2017 | 1995 |
| 26 | January 31, 2017 | 2037 |
| 27 | February 15, 2017 | 2152 |

|  | Approx. Date of Issuance | Check Number |
|---|---|---|
| 28 | February 28, 2017 | 2200 |
| 29 | March 15, 2017 | 2243 |
| 30 | March 31, 2017 | 2283 |
| 31 | April 14, 2017 | 2321 |
| 32 | April 28, 2017 | 2361 |
| 33 | May 15, 2017 | 2401 |
| 34 | May 31, 2017 | 2442 |
| 35 | June 15, 2017 | 2493 |
| 36 | June 30, 2017 | 2552 |
| 37 | July 14, 2017 | 2622 |
| 38 | July 21, 2017 | 16625 |
| 39 | July 31, 2017 | 2693 |
| 40 | August 15, 2017 | 2761 |
| 41 | August 31, 2017 | 2832 |
| 42 | September 15, 2017 | 2893 |
| 43 | September 29, 2017 | 2945 |
| 44 | October 13, 2017 | 2992 |
| 45 | October 31, 2017 | 3035 |
| 46 | November 15, 2017 | 3080 |
| 47 | November 30, 2017 | 3128 |
| 48 | December 15, 2017 | 3175 |
| 49 | December 29, 2017 | 3220 |
| 50 | January 12, 2018 | 3283 |
| 51 | January 12, 2018 | 3284 |
| 52 | January 31, 2018 | 3334 |
| 53 | February 15, 2018 | 3373 |
| 54 | February 28, 2018 | 3415 |
| 55 | March 15, 2018 | 3455 |
| 56 | March 30, 2018 | 3495 |
| 57 | April 13, 2018 | 3536 |
| 58 | April 30, 2018 | 3579 |
| 59 | May 15, 2018 | 3620 |
| 60 | May 31, 2018 | 3663 |
| 61 | June 29, 2018 | 3769 |
| 62 | July 13, 2018 | 3839 |
| 63 | July 31, 2018 | 3907 |
| 64 | August 15, 2018 | 3976 |
| 65 | August 31, 2018 | 4039 |
| 66 | September 14, 2018 | 4079 |
| 67 | September 28, 2018 | 4091 |
| 68 | November 14, 2018 | 28537610 |
| 69 | November 15, 2018 | 4123 |
| 70 | January 15, 2019 | 19132 |
| 71 | January 31, 2019 | 19144 |

|   | Approx. Date of Issuance | Check Number |
|---|---|---|
| 72 | February 15, 2019 | 19165 |
| 73 | February 28, 2019 | 19173 |
| 74 | March 15, 2019 | 19179 |
| 75 | March 29, 2019 | 19185 |

e.      On or about the dates listed below, JOHNSON and Person 1 deposited and caused to be deposited the following BSSDC checks issued to, and purported to be endorsed by Person 1, into the PNC account, each deposit constituting a separate overt act:

|   | Approx. Date of Deposit | Check Number |
|---|---|---|
| 1 | April 28, 2014 | 18103 |
| 2 | September 22, 2014 | 18578 |
| 3 | November 3, 2014 | 18661 |
| 4 | April 1, 2015 | 18896 |
| 5 | April 20, 2015 | 18938 |
| 6 | April 24, 2015 | 15577 |
| 7 | June 15, 2015 | 18987 |
| 8 | March 3, 2016 | 839 |
| 9 | March 18, 2016 | 881 |
| 10 | April 8, 2016 | 931 |
| 11 | April 20, 2016 | 977 |
| 12 | May 16, 2016 | 1063 |
| 13 | June 3, 2016 | 1102 |
| 14 | September 2, 2016 | 1438 |
| 15 | September 2, 2016 | 1512 |
| 16 | September 22, 2016 | 1569 |
| 17 | October 13, 2016 | 1618 |
| 18 | October 24, 2016 | 1701 |
| 19 | November 4, 2016 | 1747 |
| 20 | November 16, 2016 | 1793 |
| 21 | December 8, 2016 | 1846 |
| 22 | December 19, 2016 | 1881 |
| 23 | December 29, 2016 | 16052 |
| 24 | January 3, 2017 | 1963 |
| 25 | January 17, 2017 | 1995 |
| 26 | February 2, 2017 | 2037 |
| 27 | February 23, 2017 | 2152 |
| 28 | March 2, 2017 | 2200 |
| 29 | March 17, 2017 | 2243 |
| 30 | April 11, 2017 | 2283 |
| 31 | April 19, 2017 | 2321 |
| 32 | May 8, 2017 | 2361 |

|  | Approx. Date of Deposit | Check Number |
|---|---|---|
| 33 | May 16, 2017 | 2401 |
| 34 | June 8, 2017 | 2442 |
| 35 | June 19, 2017 | 2493 |
| 36 | July 12, 2017 | 2552 |
| 37 | July 13, 2017 | 2622 |
| 38 | July 31, 2017 | 16625 |
| 39 | August 11, 2017 | 2693 |
| 40 | August 17, 2017 | 2761 |
| 41 | September 1, 2017 | 2832 |
| 42 | September 18, 2017 | 2893 |
| 43 | October 2, 2017 | 2945 |
| 44 | October 13, 2017 | 2992 |
| 45 | November 16, 2017 | 3035 |
| 46 | November 17, 2017 | 3080 |
| 47 | November 30, 2017 | 3128 |
| 48 | December 14, 2017 | 3175 |
| 49 | January 10, 2018 | 3220 |
| 50 | January 11, 2018 | 3283 |
| 51 | January 11, 2018 | 3284 |
| 52 | February 8, 2018 | 3334 |
| 53 | February 15, 2018 | 3373 |
| 54 | March 13, 2018 | 3415 |
| 55 | March 16, 2018 | 3455 |
| 56 | March 30, 2018 | 3495 |
| 57 | April 20, 2018 | 3536 |
| 58 | May 1, 2018 | 3579 |
| 59 | May 15, 2018 | 3620 |
| 60 | June 5, 2018 | 3663 |
| 61 | June 29, 2018 | 3769 |
| 62 | July 31, 2018 | 3839 |
| 63 | August 16, 2018 | 3907 |
| 64 | September 14, 2018 | 3976 |
| 65 | September 10, 2018 | 4039 |
| 66 | September 18, 2018 | 4079 |
| 67 | October 12, 2018 | 4091 |
| 68 | November 19, 2018 | 28537610 |
| 69 | December 3, 2018 | 4123 |
| 70 | February 11, 2019 | 19132 |
| 71 | February 11, 2019 | 19144 |
| 72 | March 8, 2019 | 19165 |
| 73 | March 8, 2019 | 19173 |
| 74 | April 22, 2019 | 19179 |
| 75 | April 22, 2019 | 19185 |

f.  On or about the dates listed below, JOHNSON, HOPKINS, and Person 2

signed and caused to be signed Block Grant Time Sheets, each signature constituting a separate

overt act:

| | Approx. Date of Signature |
|---|---|
| 1 | January 31, 2015 |
| 2 | October 31, 2015 |
| 3 | February 29, 2016 |
| 4 | June 30, 2018 |

g.  On or about the dates listed below, JOHNSON, HOPKINS, and Person 2

caused BSSDC to issue checks to Person 2, each check constituting a separate overt act:

| | Approx. Date of Issuance | Check Number |
|---|---|---|
| 1 | August 30, 2013 | 17612 |
| 2 | September 30, 2013 | 17695 |
| 3 | October 15, 2013 | 17695 |
| 4 | October 31, 2013 | 17762 |
| 5 | November 15, 2013 | 17795 |
| 6 | December 31, 2013 | 17893 |
| 7 | January 15, 2014 | 17921 |
| 8 | February 14, 2014 | 18054 |
| 9 | May 30, 2014 | 18208 |
| 10 | August 15, 2014 | 18466 |
| 11 | March 13, 2015 | 18878 |
| 12 | April 15, 2015 | 15578 |
| 13 | April 30, 2015 | 18986 |
| 14 | May 29, 2015 | 18945 |
| 15 | August 19, 2015 | 15701 |
| 16 | August 31, 2015 | 326 |
| 17 | February 29, 2016 | 838 |
| 18 | May 27, 2016 | 1101 |
| 19 | November 30, 2016 | 1844 |
| 20 | December 22, 2016 | 16051 |
| 21 | December 30, 2016 | 1961 |
| 22 | January 31, 2017 | 2035 |
| 23 | September 29, 2017 | 2943 |
| 24 | March 30, 2018 | 3493 |
| 25 | April 30, 2018 | 3577 |
| 26 | July 13, 2018 | 3837 |

h.      On or about the dates listed below, JOHNSON and Person 2 deposited and caused to be deposited the following BSSDC checks issued to, and purported to be endorsed by Person 2, into the PNC account, each deposit constituting a separate overt act:

| | Approx. Date of Deposit | Check Number |
|---|---|---|
| 1 | September 3, 2013 | 17612 |
| 2 | October 21, 2013 | 17695 |
| 3 | October 21, 2013 | 17695 |
| 4 | November 4, 2013 | 17762 |
| 5 | November 20, 2013 | 17795 |
| 6 | January 21, 2014 | 17893 |
| 7 | January 21, 2014 | 17921 |
| 8 | April 7, 2014 | 18054 |
| 9 | June 2, 2014 | 18208 |
| 10 | August 18, 2014 | 18466 |
| 11 | March 26, 2015 | 18878 |
| 12 | April 24, 2015 | 15578 |
| 13 | May 7, 2015 | 18986 |
| 14 | June 1, 2015 | 18945 |
| 15 | August 21, 2015 | 15701 |
| 16 | September 3, 2015 | 326 |
| 17 | March 3, 2016 | 838 |
| 18 | June 3, 2016 | 1101 |
| 19 | December 8, 2016 | 1844 |
| 20 | December 29, 2016 | 16051 |
| 21 | January 3, 2017 | 1961 |
| 22 | February 14, 2017 | 2035 |
| 23 | October 2, 2017 | 2943 |
| 24 | March 30, 2018 | 3493 |
| 25 | May 1, 2018 | 3577 |
| 26 | July 31, 2018 | 3837 |

i.      On or about the dates listed below, JOHNSON, HOPKINS, and Person 3 signed and caused to be signed Block Grant Time Sheets, each signature constituting a separate overt act:

| | Approx. Date of Signature |
|---|---|
| 1 | June 30, 2014 |
| 2 | July 30, 2014 |
| 3 | August 12, 2014 |
| 4 | December 31, 2014 |

20

| | Approx. Date of Signature |
|---|---|
| 5 | January 31, 2015 |
| 6 | February 28, 2015 |
| 7 | March 31, 2015 |
| 8 | April 30, 2015 |
| 9 | May 30, 2015 |
| 10 | September 30, 2015 |
| 11 | October 31, 2015 |
| 12 | February 29, 2016 |
| 13 | April 30, 2016 |
| 14 | February 28, 2017 |
| 15 | May 25, 2017 |

j.  On or about the dates listed below, JOHNSON, HOPKINS, and Person 3

caused BSSDC to issue checks to Person 3, each check constituting a separate overt act:

| | Approx. Date of Issuance | Check Number |
|---|---|---|
| 1 | February 27, 2015 | 18859 |
| 2 | March 13, 2015 | 18885 |
| 3 | April 15, 2015 | 15579 |
| 4 | June 30, 2015 | 19085 |
| 5 | August 31, 2015 | 339 |
| 6 | September 15, 2015 | 387 |

k.  On or about the dates listed below, JOHNSON and Person 3 deposited and

caused to be deposited the following BSSDC checks issued to, and purported to be endorsed by

Person 3, into the PNC account, each deposit constituting a separate overt act:

| | Approx. Date of Deposit | Check Number |
|---|---|---|
| 1 | March 6, 2015 | 18859 |
| 2 | March 26, 2015 | 18885 |
| 3 | April 24, 2015 | 15579 |
| 4 | July 6, 2015 | 19085 |
| 5 | September 4, 2015 | 339 |
| 6 | October 5, 2015 | 387 |

All in violation of Title 18, United States Code, Section 371.

<u>COUNT 3</u>
(Federal Program Theft, 18 U.S.C. §§ 666(a)(1)(A) and 2)

The Grand Jury further charges:

48.     The factual allegations contained in paragraphs 1 through 13 and 29 through 37 are realleged and incorporated by reference as if fully set forth herein.

49.     From on or about July 1, 2016, to on or about June 30, 2017, in the Northern District of Ohio, Eastern Division, Defendants KENNETH JOHNSON and JOHN HOPKINS, being agents of the City and the BSSDC, said government and organization each receiving in said twelve month period benefits in excess of $10,000 under a federal community development grant, aided and abetted one another to knowingly embezzle, steal, obtain by fraud, and otherwise without authority convert to the use of a person other than the rightful owner and intentionally misapply property worth at least $5,000 and owned by and under the care, custody, and control of the City and the BSSDC, that is, approximately $7285.59 issued from federal Community Development Funds.

In violation of Title 18, United States Code, Sections 666(a)(1)(A) and 2.

<u>COUNT 4</u>
(Federal Program Theft, 18 U.S.C. §§ 666(a)(1)(A) and 2)

The Grand Jury further charges:

50.     The factual allegations contained in paragraphs 1 through 13 and 29 through 37 are realleged and incorporated by reference as if fully set forth herein.

51.     From on or about July 1, 2017, to on or about June 30, 2018, in the Northern District of Ohio, Eastern Division, Defendants KENNETH JOHNSON and JOHN HOPKINS, being agents of the City and the BSSDC, said government and organization each receiving in said twelve month period benefits in excess of $10,000 under a federal community development

grant, aided and abetted one another to knowingly embezzle, steal, obtain by fraud, and otherwise without authority convert to the use of a person other than the rightful owner and intentionally misapply property worth at least $5,000 and owned by and under the care, custody, and control of the City and the BSSDC, that is, approximately $15,046.23 issued from federal Community Development Funds.

In violation of Title 18, United States Code, Sections 666(a)(1)(A) and 2.

COUNT 5<br>(Federal Program Theft, 18 U.S.C. §§ 666(a)(1)(A) and 2)

The Grand Jury further charges:

52.　　The factual allegations contained in paragraphs 1 through 13 and 29 through 37 are realleged and incorporated by reference as if fully set forth herein.

53.　　From on or about July 1, 2018, to on or about June 30, 2019, in the Northern District of Ohio, Eastern Division, Defendants KENNETH JOHNSON and JOHN HOPKINS, being agents of the City and the BSSDC, said government and organization each receiving in said twelve month period benefits in excess of $10,000 under a federal community development grant, aided and abetted one another to knowingly embezzle, steal, obtain by fraud, and otherwise without authority convert to the use of a person other than the rightful owner and intentionally misapply property worth at least $5,000 and owned by and under the care, custody, and control of the City and the BSSDC, that is, approximately $5,576.68 issued from federal Community Development Funds.

In violation of Title 18, United States Code, Sections 666(a)(1)(A) and 2.

COUNT 6
(Federal Program Theft, 18 U.S.C. §§ 666(a)(1)(A) and 2)

The Grand Jury further charges:

54.     The factual allegations contained in paragraphs 1 through 28 are realleged and incorporated by reference as if fully set forth herein.

55.     From on or about July 1, 2015, to on or about June 30, 2016, in the Northern District of Ohio, Eastern Division, Defendants KENNETH JOHNSON and GARNELL JAMISON, being agents of the City, said government receiving in said twelve month period benefits in excess of $10,000 under a federal community development grant, and Robert Fitzpatrick, aided and abetted one another to knowingly embezzle, steal, obtain by fraud, and otherwise without authority convert to the use of a person other than the rightful owner and intentionally misapply property worth at least $5,000 and owned by and under the care, custody, and control of the City, that is, approximately $14,400 in falsely claimed reimbursements from JOHNSON's council member expense account.

In violation of Title 18, United States Code, Sections 666(a)(1)(A) and 2.

COUNT 7
(Federal Program Theft, 18 U.S.C. §§ 666(a)(1)(A) and 2)

The Grand Jury further charges:

56.     The factual allegations contained in paragraphs 1 through 28 are realleged and incorporated by reference as if fully set forth herein.

57.     From on or about July 1, 2016, to on or about June 30, 2017, in the Northern District of Ohio, Eastern Division, Defendants KENNETH JOHNSON and GARNELL JAMISON, being agents of the City, said government receiving in said twelve month period benefits in excess of $10,000 under a federal community development grant, and Robert

Fitzpatrick, aided and abetted one another to knowingly embezzle, steal, obtain by fraud, and otherwise without authority convert to the use of a person other than the rightful owner and intentionally misapply property worth at least $5,000 and owned by and under the care, custody, and control of the City, that is, approximately $14,400 in falsely claimed reimbursements from JOHNSON's council member expense account.

In violation of Title 18, United States Code, Sections 666(a)(1)(A) and 2.

<u>COUNT 8</u>
(Federal Program Theft, 18 U.S.C. §§ 666(a)(1)(A) and 2)

The Grand Jury further charges:

58.    The factual allegations contained in paragraphs 1 through 28 are realleged and incorporated by reference as if fully set forth herein.

59.    From on or about July 1, 2017, to on or about June 30, 2018, in the Northern District of Ohio, Eastern Division, Defendants KENNETH JOHNSON and GARNELL JAMISON, being agents of the City, said government receiving in said twelve month period benefits in excess of $10,000 under a federal community development grant, and Robert Fitzpatrick, aided and abetted one another to knowingly embezzle, steal, obtain by fraud, and otherwise without authority convert to the use of a person other than the rightful owner and intentionally misapply property worth at least $5,000 and owned by and under the care, custody, and control of the City, that is, approximately $14,400 in falsely claimed reimbursements from JOHNSON's council member expense account.

In violation of Title 18, United States Code, Sections 666(a)(1)(A) and 2.

<u>COUNT 9</u>
(Aiding and Assisting in the Preparation of False Returns, 26 U.S.C. § 7206(2))

The Grand Jury further charges:

60.     On or about April 10, 2015, in the Northern District of Ohio, Eastern Division, Defendants KENNETH JOHNSON and GARNELL JAMISON, both residents of Cleveland, Ohio, did willfully aid and assist in, and procure, counsel and advise the preparation and presentation to the Internal Revenue Service, of JOHNSON's United States Individual Income Tax Return, Form 1040, for the calendar year 2014, which was false and fraudulent as to a material matter in that, as JOHNSON and JAMISON well knew and believed, the return understated JOHNSON's total income on line 22 by failing to report additional income and by inflating the value of JOHNSON's itemized deductions.

In violation of Title 26, United States Code, Section 7206(2).

<u>COUNT 10</u>
(Aiding and Assisting in the Preparation of False Returns, 26 U.S.C. § 7206(2))

The Grand Jury further charges:

61.     On or about March 24, 2016, in the Northern District of Ohio, Eastern Division, Defendants KENNETH JOHNSON and GARNELL JAMISON, both residents of Cleveland, Ohio, did willfully aid and assist in, and procure, counsel and advise the preparation and presentation to the Internal Revenue Service, of JOHNSON's United States Individual Income Tax Return, Form 1040, for the calendar year 2015, which was false and fraudulent as to a material matter in that, as JOHNSON and JAMISON well knew and believed, the return understated JOHNSON's total income on line 22 by failing to report additional income and by inflating the value of JOHNSON's itemized deductions.

In violation of Title 26, United States Code, Section 7206(2).

<u>COUNT 11</u>
(Aiding and Assisting in the Preparation of False Returns, 26 U.S.C. § 7206(2))

The Grand Jury further charges:

62.     On or about April 8, 2017, in the Northern District of Ohio, Eastern Division, Defendants KENNETH JOHNSON and GARNELL JAMISON, both residents of Cleveland, Ohio, did willfully aid and assist in, and procure, counsel and advise the preparation and presentation to the Internal Revenue Service, of JOHNSON's United States Individual Income Tax Return, Form 1040, for the calendar year 2016, which was false and fraudulent as to a material matter in that, as JOHNSON and JAMISON well knew and believed, the return understated JOHNSON's total income on line 22 by failing to report additional income and by inflating the value of JOHNSON's itemized deductions.

In violation of Title 26, United States Code, Section 7206(2).

<u>COUNT 12</u>
(Aiding and Assisting in the Preparation of False Returns, 26 U.S.C. § 7206(2))

The Grand Jury further charges:

63.     On or about May 30, 2018, in the Northern District of Ohio, Eastern Division, Defendants KENNETH JOHNSON and GARNELL JAMISON,  both residents of Cleveland, Ohio, did willfully aid and assist in, and procure, counsel and advise the preparation and presentation to the Internal Revenue Service, of JOHNSON's United States Individual Income Tax Return, Form 1040, for the calendar year 2017, which was false and fraudulent as to a material matter in that, as JOHNSON and JAMISON well knew and believed, the return understated JOHNSON's total income on line 22 by failing to report additional income and by inflating the value of JOHNSON's itemized deductions.

In violation of Title 26, United States Code, Section 7206(2).

<u>COUNT 13</u>
(Aiding and Assisting in the Preparation of False Returns, 26 U.S.C. § 7206(2))

The Grand Jury further charges:

64.     On or about October 10, 2019, in the Northern District of Ohio, Eastern Division,

Defendants KENNETH JOHNSON and GARNELL JAMISON, both residents of Cleveland,

Ohio, did willfully aid and assist in, and procure, counsel and advise the preparation and

presentation to the Internal Revenue Service, of JOHNSON's United States Individual Income

Tax Return, Form 1040, for the calendar year 2018, which was false and fraudulent as to a

material matter in that, as JOHNSON and JAMISON well knew and believed, the return

understated JOHNSON's total income on line 6 by failing to report additional income and by

inflating the value of JOHNSON's itemized deductions.

In violation of Title 26, United States Code, Section 7206(2).

<u>COUNT 14</u>
(Tampering with a Witness, 18 U.S.C. §§ 1512(b)(1) and 2)

65.     On or about October 2, 2020, in the Northern District of Ohio, Eastern Division,

Defendants KENNETH JOHNSON and GARNELL JAMISON, aided and abetted one another to

knowingly corruptly persuade and attempt to corruptly persuade, and engage and attempt to

engage in misleading conduct toward Person 4 by providing Person 4 with false and fraudulent

information and records purporting to document charitable donations made by JOHNSON, and

other material information, with the intent to influence the testimony of Person 4 in an official

proceeding, to wit: the investigation of Grand Jury 19-2-G, a Grand Jury of the United States

sitting in the Northern District of Ohio, held on November 9, 2020.

In violation of Title 18, United States Code, Sections 1512(b)(1) and 2.

<u>COUNT 15</u>
(Falsification of Records in Federal Investigations, 18 U.S.C. §§ 1519 and 2)

66.     On or about October 2, 2020, in the Northern District of Ohio, Eastern Division,

Defendants KENNETH JOHNSON and GARNELL JAMISON, did knowingly alter, falsify,

conceal, cover up, and make a false entry in a record and document, to wit:  a donation receipt,

with the intent to impede, obstruct, and influence the investigation and proper administration of a

federal grand jury proceeding, a matter that JOHNSON and JAMISON knew and contemplated

was within the jurisdiction of the United States Department of Justice and Federal Bureau of

Investigation, departments and agencies of the United States.

In violation of Title 18, United States Code, Sections 1519 and 2.


A TRUE BILL.


Original Document—Signatures on file with the Clerk of Courts, pursuant to the E-Government
Act of 2002.