ADAMS, J.

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | CASE NO. 1:21CR123 |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | Judge John R. Adams |
| KENNETH JOHNSON, et al., | ) | |
| | ) | ORDER |
| Defendants. | ) | |
| | ) | |

Pending before the Court is Defendant Garnell Jamison's motion that requests that this Court make findings related to a possible courtroom closure during trial in this matter. Doc. 55. The motion is GRANTED.

The Supreme Court of the United States has interpreted the Sixth Amendment and the First Amendment as imposing a presumption that criminal trials, including voir dire, will be open to the public. *Press-Enter. Co. v. Superior Court of Calif., Riverside Cnty.*, 464 U.S. 501, 505 (1984) (recognizing this presumption under the First Amendment); *Waller v. Georgia*, 467 U.S. 39, 46 (1984) (holding, after *Press-Enterprise* was decided, that the "Sixth Amendment right of the accused is no less protective of a public trial than the implicit First Amendment right of the press and public"). Public trial serves the interests of both the defendant and the public by "ensuring that judge and prosecutor carry out their duties responsibly, ... encourag[ing] witnesses to come forward[,] and discourag[ing] perjury." *Waller*, 467 U.S. at 46. The Court acknowledges that the District protocols imposed by General Order of the Court -- which include, among other things, temperature checks at the courthouse door, completing questionnaires each day before entering,

required use of face masks in public areas, and social distancing -- may constitute a "partial closure" of the courthouse under Sixth Amendment jurisprudence. *See, e.g., United States v. Smith*, 426 F.3d 567, 571 (2d Cir. 2005) (finding that security measures imposed after the 9/11 terrorist attacks, including ID checks, effected at most a "partial closure" because they "(1) barred only those would-be spectators who opted not to submit [IDs], and (2) presumably may have 'chilled' attendance by some potential spectators who opted not to present themselves at the courthouse" (quoting *United States v. DeLuca*, 137 F.3d 24, 33-34 (1st Cir. 1998))). "Partial closures" are constitutionally permissible so long as: (i) there is a "'substantial reason' for the closure that is likely to be prejudiced in the absence of [the] closure," (ii) "the closure is no broader than necessary," (iii) "the trial court considers reasonable alternatives to closing the proceeding," and (iv) "the trial court makes adequate findings to support the closure." *Id*. at 571, 573 (citing *Waller*, 467 U.S. at 45; *Guzman v. Scully*, 80 F.3d 772, 775 (2d Cir. 1996)).

Based upon the now-existing General Order, the Akron Courthouse still uses temperature checks and COVID screening questions, requires faces masks in public areas, and enforces the CDC's current guidance on social distancing. As a result of social distancing, there are limitations on the number of spectators that may sit in the Courtroom at any given time. Unfortunately, during the Court's voir dire process, potential jurors fill both the undersigned's Courtroom and an additional courtroom that receives a live audio and video feed of the proceedings. As a result, public viewing of that portion of the process cannot be achieved while staying in compliance with the District's COVID safety protocols.

As a result, the Court has no trouble in finding the "partial closure" test satisfied here.

With that said, there is no dispute that ensuring the safety of everyone inside the courthouse is a paramount concern. Further, no party contends that the District's protocols are ineffective or broader than necessary. As to the third factor, the Court has considered potential alternatives to holding the trial under current conditions, including conducting the trial entirely remotely via videoconferencing and postponing trial until the pandemic abates. Neither of these alternatives, however, is feasible.1 Accordingly, any partial closure of the courthouse imposed by the District's COVID-19 protocols would not infringe on the defendants' Sixth Amendment right to a public trial.

The Court also notes that following the completion of voir dire, the current safety protocols will allow ample room for the public to directly view the proceedings. Half of the gallery in the Courtroom will remain open for the public for the duration of the trial following voir dire. The other half will by necessity be utilized for jurors to be seated while remaining socially distanced.[2] As a result, however, the Court can still allow for numerous family members and the media to view the trial proceedings. As the public aspect of a trial serves to ensure that the process is carried our fairly, the purposes of the public trial provision will be fulfilled.

The Court does not take the decision to abridge this constitutional right lightly. But the need to protect the trial participants from exposure to additional persons who may be contagious for COVID-19 and the need to limit the possibility of spreading COVID-19 from trial participants

---

1 The parties' witness list includes more than 100 names making a videoconference trial impractical. Moreover, given the public nature of the charges in this matter and the fact that the Court's trial calendar is booked into October, delaying the trial does not present a reasonable alternative to conducting the trial as scheduled.

2 In the event that even more individuals seek to witness the trial, the Court will maintain the extra courtroom used in voir dire as an "overflow" room for these persons. The room will receive a live audio and video feed of the proceedings, again minimizing any impact of the safety protocols on the defendants' right to a public trial.

to the broader public, necessitates this order that jury selection will be closed to in-person spectators due to lack of space. Following voir dire, participants will be able to attend trial to the extent space allows, and live video and audio of the trial proceedings will be streamed to a viewing room within the courthouse to facilitate viewing by any additional members that cannot be seated directly in the courtroom.

  IS SO ORDERED.


July 16, 2021             /s/*John R. Adams*
Date                JOHN R. ADAMS
                 UNITED STATES DISTRICT JUDGE