UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | CASE NO. 1:21CR123 |
| | ) | |
| Plaintiff, | ) | |
| | ) | JUDGE JOHN R. ADAMS |
| v. | ) | |
| | ) | ORDER |
| KENNETH JOHNSON, | ) | |
| | ) | |
| Defendant. | ) | |

Pending before the Court is Defendant Kenneth Johnson's motion for a new trial. Doc. 138. The Government has opposed the motion. Doc. 143. Upon review of the arguments offered by Johnson, the motion is DENIED.

Johnson's jury trial with his co-defendant Garnell Jamison was conducted on July 21, 2021 through July 30, 2021. On July 30, 2021, the jury convicted Johnson on all 15 of the counts in the indictment. On August 13, 2021, Johnson moved for a new trial. The Government filed its opposition on August 27, 2021. Johnson offered no reply in support of his motion. The Court now resolves the motion.

**NEW TRIAL STANDARD**

1

Rule 33 provides that "[u]pon the defendant's motion, [a district] court may vacate any judgment and grant a new trial if the interest of justice so requires." Fed.R.Crim.P. 33(a). The rule "does not define 'interest[ ] of justice' and the courts have had little success in trying to generalize its meaning." *United States v. Kuzniar*, 881 F.2d 466, 470 (7th Cir. 1989). However, "it is widely agreed that Rule 33's "interest of justice" standard allows the grant of a new trial where substantial legal error has occurred." *United States v. Munoz*, 605 F.3d 359, 373 (6th Cir. 2010).

**CAMPAIGN FUNDS**

Johnson first contends that the Government "improperly insinuated that [he] misappropriated public campaign funds" without any legal or factual support. Doc. 138 at 4. Initially, the Court notes that Johnson does not reference any portion of the transcript in support of his assertion. Furthermore, Johnson does not specify the type of error or legal standard he believes should apply to this assertion. Out of an abundance of caution, the Court construes it as a claim of prosecutorial misconduct.

Contrary to Johnson's contentions, the Government did not first introduce questions or testimony regarding campaign funds. In that regard, Johnson and his counsel engaged in the following question and answer during his direct testimony:

> Q. What was the reason why initially you didn't put your name on that particular receipt for the $31,000 Buckeye?
>
> A. Because I have three other LDCs, local development corporations in my ward, and if you give money to one -- they all go to lunch together. If you give money to one, all the rest of them are going to want the same thing. And I couldn't afford it. The money that I gave them was my campaign money and my savings.

Doc. 128 at 194-195. During cross-examination, the Government then elicited testimony from Johnson that his official campaign funds account had no record of such a donation to Buckeye.

2

Johnson noted during that questioning: "I never used the campaign account for that." Doc. 248.

Initially, the Court notes that there was nothing improper about the cross-examination questions posed by the Government. During his testimony, Johnson claimed to have expended "campaign funds" for a donation. The Government was well within its rights to demonstrate to the jury that there was no paper record of any funds being withdrawn or transferred to Buckeye from Johnson's official campaign account. As such, Johnson cannot demonstrate any misconduct by the Government.

Furthermore, the Government indicated concern that the jury could be confused by *any* discussion of the campaign funds and requested a curative instruction. The Court agreed and informed the jury:

> And then I want to give you a limiting instruction. It's an important one.
>
> There were certain questions asked about Mr. Johnson's campaign account, his campaign finance account.
>
> There is -- again, specifically, there is no evidence nor are there any charges against Mr. Johnson related to his finance account -- campaign account. No one is alleging that he misused that account or that he violated the law, Ohio campaign law in any fashion with regard to that specific account.
>
> So just make that clear, so avoid any confusion or issues about the finance, the Friends of Mr. Johnson account, so to speak. Right?
>
> Not an issue. Not to be considered by you in any way in deciding the issues in this case.
>
> I just want to make sure you understand that.

Doc. 128 at 271-272. Accordingly, any conceivable prejudice stemming from any commentary or questions regarding campaign funds was immediately remedied through the Court's instruction. Johnson's first alleged error, therefore, cannot support his request for a new trial.

**SUBJECTIVE VALUES**

Johnson next contends that the Court's exclusion of the testimony he sought to offer on the value of certain "classic" automobiles was error that requires a new trial. The Court finds no merit in this contention.

First, Johnson contends that his conversation with George Qua of Qua Buick "was relevant to show his state of mind" regarding the value of the donated vehicle. As such, Johnson contends that FRE 803(3) permits introduction of the conversation. FRE 803(3) provides in relevant part: "A statement of the declarant's then-existing state of mind (such as motive, intent, or plan) or emotional, sensory, or physical condition (such as mental feeling, pain, or bodily health)." However, when interpreting Michigan's state law equivalent of FRE 803(3), the Sixth Circuit held: "While MRE 803(3) allows the admission of hearsay statements that go to the declarant's state of mind, statements that go to *why* the declarant has a certain state of mind are inadmissible. *Daniels v. Lafler*, 192 F. App'x 408, 425 (6th Cir. 2006)(emphasis added).

The trial transcript reveals that Johnson was repeatedly permitted to offer testimony about his state of mind regarding his subjective valuation of the vehicles in question. Johnson opined that the Buick was very valuable because it was "the last big Buick off the assembly line." Doc. 128 at 178. Johnson further informed the jury that "the notoriety of those cars, especially in the later years, was phenomenal. Some kids had never seen a car like that. And every judge, every politician, every mayor wanted to ride in them." Doc. 128 at 179. Johnson concluded: "Well, the significance [in terms of value] is historical, or celebrity use." Doc. 128 at 180. The **conversation** with Mr. Qua, however, was properly excluded because it did not offer any information on Johnson's statement of mind. Instead, Johnson offered it specifically to detail *why*

4

he had his current state of mind. Johnson's counsel in fact asked: "And you viewed that was -- you had that view because based on what you were told?" Doc. 128 at 178. Thus, the record leaves no doubt regarding the purpose of Johnson seeking to introduce the evidence did not fit within FRE 803(3). Accordingly, the Court finds no error in its exclusion of this evidence.

With respect to the internet printouts that appeared to list for sale other similar cars from the 1970s, the Court adheres to its reasoning during trial. First, many of the printouts offered by Johnson were for vehicles from different years or different models. As such, they could not be relevant to the value of the vehicles at question. Second, *none* of the proffered exhibits were authenticated in any manner – a fact that standing alone warranted their exclusion. Third, the printouts indicated *offers* for sale. As they did not include any completed sales, they could be deemed relevant to fair market value. Finally, each of the exhibits suffered from the same fatal flaw of being woefully incomplete. While Johnson sought to offer them as comparisons to his own vehicles, the printouts offered no *detailed* information beyond the year, make, and model of the vehicles. They did not contain any addition information that would have allowed the jury to compare those vehicles to those at issue in the trial. For all those reasons, the Court finds no error in exclusion of the internet printouts.

**SUFFICIENCY OF THE EVIDENCE – TAMPERING WITH A WITNESS AND FALSIFICATION OF RECORDS**

Next, Johnson contends that the Government offered insufficient evidence to support his convictions for tampering with a witness and falsification of records. Initially, the Court notes:

> Rule 33 permits a new trial if a verdict is against the "manifest weight" of the evidence. Such a motion calls on the trial judge to take on the role of a thirteenth juror, weighing evidence and making credibility determinations firsthand to ensure

5

> there is not a miscarriage of justice. This differs from a motion under Rule 29, which challenges the sufficiency of the evidence. Rule 29 asks whether "any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt,"—not whether the trial judge himself believes the manifest weight of the evidence supports the verdict. So while Rule 29 requires the court to view the evidence in a light most favorable to the prosecution, Rule 33 does not.

*United States v. Mallory*, 902 F.3d 584, 596 (6th Cir. 2018)(citations and emphasis omitted). While Johnson specifically challenges the sufficiency of the evidence, the Court will review his claim under the more favorable weight of the evidence standard.

Having presided over the trial and listened to the witness testimony, the Court finds no merit in Johnson's challenge to these convictions. Johnson concedes, as he must, that he and his co-defendant met with Elijah Johnson on October 2, 2020 and provided him with a binder of purported donation receipts. The timing of the production of those documents in relation to Johnson's receipt of a target letter immediately brings into question the validity of their contents. However, the Court also heard testimony that the kitchen that Johnson allegedly extensively renovated in 2015 had remained unchanged since 2008. When asked if there were any substantial changes to the kitchen since 2008, Jessie Wilcox responded: "None whatsoever." Doc. 117 at 184. Michael Cox, the Director of Public Works for the City of Cleveland, was asked and answered questions as follows:

> Q. And to your knowledge, did you find any records of items that Mr. Johnson donated to the City of Cleveland?
>
> A. To my knowledge, no.
>
> Q. How about records of donated money that Mr. Johnson made to the City of Cleveland?
>
> A. To my knowledge, no.

6

> Q. Finally, records of donated time that Mr. Johnson made to the City of Cleveland?
>
> A. Not to my knowledge.
> Q. To your knowledge, sir, did you find any records pertinent to donations made by Mr. Johnson to the City of Cleveland at all?
>
> A. No, ma'am.

Doc. 177 at 203-204. The above testimony, coupled with the Court's observance of both Elijah Johnson and Kenneth Johnson demeanor while testifying, support the conclusion that Johnson submitted false donation records to Elijah Johnson in an attempt to influence his grand jury testimony. Accordingly, Kenneth Johnson's convictions for tampering with a witness and falsification of records were not against the weight of the evidence.

**MISTRIAL**

Finally, Johnson renews the same argument that was contained in his motion for mistrial. The Court issued a four-page written order denying Johnson's motion for mistrial on July 27, 2021. Doc. 126. The Court has no reason to revisit its ruling or rationale as Johnson has offered no new argument in his motion. Accordingly, Johnson's final argument lacks merit.

**CONCLUSION**

Based upon the above, Johnson has failed to demonstrate any legal error during his trial. Accordingly, his motion for new trial is DENIED.

IT IS SO ORDERED.

October 5, 2021  /s/ John R. Adams
Dated  JUDGE JOHN R. ADAMS
United States District Judge