ADAMS, J.

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | CASE NO.  1:21CR123 |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | Judge John R. Adams |
| KENNETH JOHNSON, | ) | |
| | ) | ORDER |
| Defendant. | ) | |
| | ) | |

Pending before the Court is Defendant Kenneth Johnson's *pro se* motion for compassionate release. Doc. 205.   Upon review, the motion is DENIED.[1]

The Sixth Circuit has previously explained this Court's duties and obligations when considering a motion for compassionate release.

> Sections 3582(c)(1)'s and (c)(2)'s parallel language and structure compel us to conclude that compassionate release hearings are sentence-modification proceedings and that courts considering motions filed under § 3582(c)(1) must follow a *Dillon*-style test. The three-step § 3582(c)(1)(A) test is as follows. At step one, a court must "find[ ]" whether "extraordinary and compelling reasons warrant" a sentence reduction. 18 U.S.C. § 3582(c)(1)(A)(i). At step two, a court must "find[ ]" whether "such a reduction is consistent with *applicable* policy statements issued by the Sentencing Commission." *Id*. § 3582(c)(1)(A) (emphasis added). The Commission's policy statement on compassionate release resides in U.S.S.G. § 1B1.13. *See* U.S.S.G. § 1B1.13 (U.S. Sent'g Comm'n 2018). Thus, if § 1B1.13 is

---

1 Through a clerical oversight, Johnson's motion was not ruled upon during the Court's normal timeline. Accordingly, the Court will conduct a full merits review of Johnson's request to remove any prejudice from the delay.

> still "applicable," courts must "follow the Commission's instructions in [§ 1B1.13] to determine the prisoner's eligibility for a sentence modification and the extent of the reduction authorized." At step three, "§ 3582(c)[ (1)(A) ] instructs a court to consider any applicable § 3553(a) factors and determine whether, in its discretion, the reduction authorized by [steps one and two] is warranted in whole or in part under the particular circumstances of the case."

*United States v. Jones*, 980 F.3d 1098, 1107–08 (6th Cir. 2020)(citations and footnotes omitted).[2]

> The § 3553 factors referenced in the statute include (1) the nature and circumstances of the offense and the defendant's history and characteristics; (2) the need for the sentence imposed to reflect the seriousness of the offense; (3) the need to protect the public from further crimes of the defendant; (4) the sentencing guideline range; and (5) the need to avoid unwarranted sentence disparities among defendants with similar records guilty of similar conduct. 18 U.S.C. § 3553(a). These factors implicitly allow the Court to consider the amount of time served when determining if a reduction in sentence is appropriate. Also, district courts can consider non-retroactive changes in law relevant to sentencing as part of their weighing the § 3553(a) sentencing factors. District courts are encouraged to be explicit and particular with their factual reasoning when they consider the § 3553(a) factors.

*United States v. Brown*, No. 1:19-CR-129(2), 2024 WL 987528, at *3 (S.D. Ohio Mar. 7, 2024)(citations and quotations omitted).

While it is highly unlikely that Johnson has demonstrated extraordinary and compelling circumstances that would warrant consideration of his request for compassionate release, the Court

---

[2] The sentencing commission has since clarified that § 1B1.13 is in fact applicable to applications filed by prisoners. That section now reads: (a) In General.--Upon motion of the Director of the Bureau of Prisons or the defendant pursuant to 18 U.S.C. § 3582(c)(1)(A), the court may reduce a term of imprisonment (and may impose a term of supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment) if, after considering the factors set forth in 18 U.S.C. § 3553(a), to the extent that they are applicable, the court determines that--
(1)(A) Extraordinary and compelling reasons warrant the reduction; or
(B) The defendant (i) is at least 70 years old; and (ii) has served at least 30 years in prison pursuant to a sentence imposed under 18 U.S.C. § 3559(c) for the offense or offenses for which the defendant is imprisoned;
(2) The defendant is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g); and
(3) The reduction is consistent with this policy statement.

U.S.S.G. 1B1.13.

will nonetheless review the § 3553(a) factors which compel the denial of his motion.

Initially, the Court notes that much of Johnson's argument focuses upon various medical ailments. However, many of those ailments, including arthritis in his left knee and a blood clotting disorder, were known to the Court as they were contained in his presentence report. Similarly, when fashioning a sentence on October 8, 2021, the Court was well aware of Johnson's age and the impact that prison may have on him due to his age. As such, those factors do not weigh in support of compassionate release. The Court is also mindful that Johnson filed his motion for compassionate release only 9 months after his sentencing hearing during which the Court sentenced him to 72 months in prison - another factor that weighs against his motion.

The underlying facts of Johnson's convictions also weigh heavily against shortening his prison term. Trial testimony revealed that Johnson recruited Robert Fitzpatrick into his criminal scheme. Johnson described Fitzpatrick as "one of the kids that came to the rec center" and that he "literally raised" Fitzpatrick. Johnson took advantage of this relationship to enrich himself and ultimately result in a felony conviction for Fitzpatrick.

Johnson used similar methods in the Buckeye Shaker scheme. Therein, Johnson placed co-defendant Garnell Jamison as the supervisor of the landscaping word allegedly being performed for Buckeye Shaker. In that scheme, friends and family of Johnson including Kevin Johnson, Bryan Johnson, Michael Johnson, and Kenneth Johnson, Jr., routinely received payments for landscaping duties they alleged performed. In total, checks totaling over $50,000 were issued to these individuals. These checks were later deposited into or transferred into accounts controlled by Johnson. Johnson perpetuated the scheme by continuously ensuring Buckeye Shaker that he

3

would obtain more city funds to keep the entity afloat.

With respect to Johnson's overall involvement, there can be no doubt that he was an organizer/leader of the schemes.  Further, there can be no dispute that he utilized his elected position to facilitate his crimes and utilized minors in some of those schemes.  Johnson's schemes, in turn, allowed him to live a lifestyle far beyond that which would have been possible from solely his salary and pension.  Finaly, and perhaps most important to the Court, Johnson has never demonstrated *any* remorse for his criminal conduct.  Johnson appears to believe that he was simply doing what all elected officials were doing.  However, the overwhelming evidence demonstrated that Johnson engaged in scheme after scheme designed solely to enrich himself to the detriment of friends, family, his constituents, and the general public.

Based upon the above, the § 3553(a) factors compel the conclusion that compassionate release and/or a sentence reduction is not warranted.  Johnson's motion for compassionate release is DENIED.

IT IS SO ORDERED.

October 28, 2024　　　　　　　　　　　　　　　　/s/*John R. Adams*
Date　　　　　　　　　　　　　　　　　　　　　JOHN R. ADAMS
　　　　　　　　　　　　　　　　　　　　　　　UNITED STATES DISTRICT JUDGE

4